Blair v. Green.

ROBERT BLAIR'S executor et al.

v.

RACHEL B. GREEN et al.

An executor who, as such, is also a trustee of a one-third share in the re-
sidue of the estate directed to be held in trust for certain beneficiaries, files
his bill, before any settlement of the estate or other final ascertainment of the
amount of the share so to be held in trust, praying that his dealings so far
with the estate may be approved, and that a new trustee may be appointed to
take charge of the share subjected to the trust, and that he may settle in this
court with such trustee, making the *cestuis que trustent* parties defendant.—
*Held*, in substance, a prayer and offer to settle his accounts as executor in this
court, and that no cross-bill on the part of the *cestuis que trustent* is necessary
in order to have such account taken and settled here; *held, further*, that in
such accounting the defendants *cestuis que trustent* will occupy the position of
actors without filing a cross-bill, and be entitled to all the remedies of com-
plainants as against the executor; *held, further*, that mere general charges of
misconduct on the part of the executor, without any specifications of fact, with
a prayer for a receiver, are not sufficient to warrant the court in retaining the
cross-bill.

On motion to strike out answer by way of cross-bill.

*Mr. J. G. Shipman*, for the complainants.

*Mr. Thos. Kays*, for the defendants.

PITNEY, V. C.

Robert Blair, of Warren county, died November 15th, 1887,
testate of a will, consisting of an original will and four codicils,
by which, after providing for his widow and a small legacy for
a nephew, he divided all the residue of his estate equally (with
an exception unnecessary to be stated) between his three daugh-
ters, namely, Mrs. Adams, Mrs. Armstrong and Mrs. Green,
but directed that the share of Mrs. Green should be held in
trust by his executors for her benefit, as to the income, during
her life, and at her death to be divided among her children, of

whom she has four.  He appointed four persons, among them
his son-in-law, Dr. Milton N. Armstrong, executors.  Of these,
one died before the testator, two others declined to act, so that
the burthen of the execution of the will fell upon Dr. Armstrong.
Among the provisions of the will was one relieving the executors
from the duty of filing a formal inventory and appraisement,
and from settling the estate in the probate court, but authorizing
and directing an exhibition to the legatees of an inventory
privately, and a settlement with them in the same manner.

Dr. Armstrong proved the will promptly and took possession
of the estate, which, besides a farm and some other real estate
situate in New Jersey, all of which was devised to the widow,
consisted mainly of railroad bonds, with a few shares of stock,
and amounted to nearly, or quite, $400,000.

The provision for Mrs. Blair consisted, in part, of certain
shares of bank stock specifically bequeathed, and, in part, of a
bequest of $10,000, to be paid in cash or in railroad bonds, at
her option.  The executor satisfied this legacy, within a few
weeks after the probate of the will, by transferring the shares of
bank stock and delivering to Mrs. Blair ten railroad bonds of
$1,000 each at their par value.  He also, within a month,
called the daughters together, exhibited to them an inventory
and statement, in rough, of the assets, and showed them the
assets themselves, and made a partial distribution in specie of
them among the three, delivering to Mrs. Armstrong and Mrs.
Adams their several shares, and retaining possession of Mrs.
Green's share as directed by the will, taking from her, and
giving to her, informal receipts showing the transaction.  This
was done on December 31st, 1887.

Shortly after this difficulties arose between Mrs. Green and
her sisters, resulting in bad feeling, and an appeal by Mrs. Green
from the surrogate's probate of the will, and in the expression
of a strong desire on her part that Dr. Armstrong should not
act as trustee for her and her children.  Exceptions were also
taken by her to his mode of making the partial distribution
above mentioned and of settling with her mother, and she
charged that he had, in these and other matters, made errors

Blair v. Green.

against her interest and that of her children.   The appeal from
the surrogate's probate was dismissed, and the matters directly
in dispute between Mrs. Green and her sisters were settled
among themselves.

When the affair had reached this condition, and before any
final settlement or division of the estate had been made, or
attempted to be made, the present bill was filed, in which Dr.
Armstrong, as sole acting executor, Mary Blair, widow, Lizzie
K. Armstrong and Sarah P. Adams, two of the children of
Robert Blair, are joined as complainants, and Rachel B. Green,
the other daughter, and her four children are joined as defend-
ants.

The bill, after setting out the will at length and stating what
the sole acting executor had done in its execution, and the excep-
tions to his conduct which had been taken by Mrs. Green, as
above stated, prays that his conduct in that behalf may be passed
upon and approved by the court, and

" That your orator, Milton N. Armstrong, may, by the decree of this Hon-
orable Court, be relieved and discharged from any further charge of the estate
belonging to the said Rachel B. Green and her children under the will of the
said Robert Blair, your orator to act in all other respects as directed by the
said will, and that a trustee may be appointed for the said Rachel B. Green
and her children by the decree of this Court, and upon such terms as this
Court shall direct, to take charge of all the estate devised and bequeathed
under the said will and codicils to the said Rachel B. Green and her children,
*and that your orator Milton N. Armstrong may settle with such newly appointed
Trustee in this Honorable Court,* and that your orator Milton N. Armstrong may
settle with the said newly-appointed Trustee and may be absolutely discharged
from all liability to said estate so far as the estate of the said Rachel B. Green
and her children are interested in said will, but shall remain in charge of all
the balance of said estate so far as the said Lizzie K. Armstrong, Sarah P.
Adams, Mary Blair and Frederick Dennis are concerned."

To this bill Mrs. Green personally, and as guardian for her
children, who are all infants, has filed a voluminous answer,
combined with a cross-bill, praying cross relief against the com-
plainant herein.

Motion is made to strike out so much of the answer as takes
the shape of a cross-bill, on various grounds.   The motion was

43

elaborately argued, without regard to the form of the notice, and is now to be dealt with.

The objection taken to the cross-bill is, that it does not ask for any relief which the defendants cannot have under the original bill; that it is wholly unnecessary and idle. Further criticism was made on its extreme volume, and the fact that it repeats at great length a large part of the matter of the answer, and that the answer itself is also more voluminous than is necessary, repeating in itself twice matters which have no place in it at all, and that these irrelevant matters are repeated again in the cross-bill.

I find all these exceptions to the volume of the answer and cross-bill well taken. The matter which is repeated three times is a careful and lawyer-like statement of what the law would declare to be the duty of the executor in settling this estate, such as would be prepared by counsel for the guidance of the executor, but I am unable to see what place it has in an equity pleading. The answer and cross-bill also contain a large volume of statement of fact which, in my judgment, is entirely irrelevant, and has no bearing whatever upon the controversy before the court.

But the principal question is, whether or not the cross-bill should be permitted to stand, even if purged of these irrelevant matters. Its object and prayer is, that the accounts of the executor may be taken and stated and settled in this court, and the share of Mrs. Green and her children ascertained, a new trustee appointed, and the share paid or transferred to him.

The main ground upon which counsel for the defendants rested his argument in favor of retaining the cross-bill was, that the defendants are entitled to a full and complete account and settlement of the estate of Robert Blair, and that the bill does not offer to render any such account, and that no such account and settlement can be had in the ordinary course of practice under the original bill as framed.

In this I think the defendant's counsel is mistaken. The above extract from the bill shows that the offer is that the executor may settle with such newly-appointed trustee in this court; that is to say, under the supervision of this court.

Now, no such settlement can be made with a newly-appointed trustee without a full settlement of the accounts of the executor and of all his transactions with the estate. Without such settlement, the share of Mrs. Green and her children cannot be ascertained. I think that the complainant, in effect, asks the court to settle his account, and that such settlement is necessary in order to give the complainant the relief he asks for, and is necessarily included in his prayer.

Besides, the rule is, that when a party, whose duty it is to render an account, comes into this court and asks that his account shall be settled here, he becomes a defendant as well as a complainant.

In *Story's Equity Jurisprudence § 522*, the rule is thus stated :

"In all bills in equity for an account, both parties are deemed actors when the cause is before the court on its merits. It is upon this ground that the party defendant, contrary to the ordinary course of equity proceedings, is entitled to orders in a cause, to which a complainant alone is generally entitled. * * * In bills for an account, if the balance is ultimately found in favor of the defendant, he is entitled to a decree for such balance, against the complainant."

This doctrine was applied in *Scott* v. *Lalor, 3 C. E. Gr. 301.*

In *Youmans* v. *Youmans, 11 C. E. Gr. 149,* the bill was filed by an executor for directions, and the court held the bill in order to enable him to settle his account in this court.

In *Johnson* v. *Buttler, 4 Stew. Eq. 35,* which was a suit between partners, there was a cross-bill praying for discovery and charging the complainant with making false and fraudulent entries in the books of the firm, and failing to charge himself with moneys which he had received on account of the firm, and charging him with having given notes for his individual debt in the firm's name, and with other conduct of that sort, yet Chancellor Runyon struck out the cross-bill as wholly unnecessary, holding that defendant had every remedy under his answer which he could have under the cross-bill.

And in *Ayliffe* v. *Murray, 2 Atk. 58,* which was a bill by executors against the legatees for a settlement of their accounts,

in which the executors sought to enforce an agreement by the legatees to make them an extra compensation for their service, Lord Hardwicke held that the defendants, without a cross-bill, might have relief against such agreement, and he proceeded to set aside the agreement for extra compensation, as having been unduly obtained from the legatees.

Applying these principles to the case in hand, I find no complaint made in the cross-bill against Dr. Armstrong for which the defendants will not have ample remedy in a settlement of his account in this court under the complainant's bill, and without the aid of any cross-bill.

A great number of interrogatories are added to the cross-bill, to be answered by Dr. Armstrong and the other complainants under oath. No cross-bill was necessary in order to enable the defendants to administer these interrogatories, nor do I consider them at all necessary, since it is well settled practice that when an executor files an account, whether in this court or elsewhere, he must subject himself to cross-examination with regard to it.

Finally, the cross-bill makes general charges against Dr. Armstrong for having wasted the estate, and prays for the appointment of a receiver. The charges are entirely general—as that he has not accounted for all the estate; that he has used the funds of the estate for his own purposes, and the like, without the least specification of any particular instance or fact showing it to be true.

I cannot think that such charges are sufficient to induce the court to retain the cross-bill. I do not say that circumstances might not arise which would warrant the court in entertaining a bill praying no other relief than the appointment of a receiver. It is, however, usually ancillary to some other relief. But if such a bill should be presented, it seems to me it should contain specific charges of misconduct sufficient, if properly verified, to warrant the court in taking immediate action. If such facts should hereafter be brought to the attention of the court, such action can then be taken as they shall warrant; and, notwithstanding the express decision found in *Leddel* v. *Starr, 4 C. E. Gr. 159*, I think this court will find means by which to properly

protect the parties on summary motion, without resorting to the machinery of a cross-bill. In the first place, the chancellor, in that case, expressly excepted the case where there were infant defendants (which is the present case), and, in the second place, the exceptional character of the position of a complainant executor, or other trustee, who comes into this court to settle his accounts, was not adverted to by the counsel or the court in that case, and seems to have been overlooked. However, it is not necessary to settle in advance what practice the court will adopt in such a case. It is enough to say, that I do not consider the general charges of misconduct, found in this cross-bill, sufficient to induce the court to retain it.

The motion to strike out must prevail, with costs.